IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **SHAUN WILLIAMS, #09770-029** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 17−cv–153−JPG |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| **JEFFREY S. WALTON,** ) | |
| **FERNANDO CASTILLO,** ) | |
| **LESLEY DUNCAN-BROOKS,** ) | |
| **M. BAGWELL,** ) | |
| **RANDALL PASS, and** ) | |
| **PAUL HARVEY,** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

Plaintiff Shaun Williams, an inmate formerly housed in the United States Penitentiary in Marion, Illinois, brings this action for alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). In his Complaint, Plaintiff alleges that the defendants ignored his complaints of pain and delayed the treatment of his serious and painful foot condition, exasperating the problem and causing permanent damage. (Doc. 1). Plaintiff also seemingly intends to make claims, based on the same conduct, under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-80. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

(a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a

1

>governmental entity.
>   (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>       (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>       (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to allow this case to proceed past the threshold stage.

## The Complaint

In his Complaint (Doc. 1), Plaintiff makes the following allegations: on September 21, 2012, Plaintiff complained to Marion medical staff defendants regarding severe pain in his feet, though upon inspection, they found there was no malalignment or deformity. (Doc. 1-1, p. 10). Plaintiff returned to medical on October 12, 2012 complaining of pain and "crowding" of his toes due to bunions, but Marion medical staff did not treat Plaintiff for this condition. *Id.* Soon thereafter, defendant Leslee Dunkin [*sic*], a physician's assistant, noted there was some deviation with respect to Plaintiff's condition, but that it was insignificant. (Doc. 1-1, p. 11). A few days

later, an outside podiatry specialist produced a formal report on Plaintiff's condition finding hallux valgus and hammertoe, with Plaintiff's left foot at 20 degrees and his right foot at 33 degrees. (Doc 1-1, p. 12). Plaintiff continued to complain of pain from his bunions to the Marion medical staff, but his complaints were ignored. *Id.* In late November 2012, Marion medical staff members acknowledged lower back degenerative changes in Plaintiff, but claimed there were no surgical options to fix it, despite Plaintiff's belief that the changes were caused by his feet. *Id.*

In late December, the Marion medical staff ignored Plaintiff's x-ray results, claiming they showed nothing. *Id.* In February 2013, a report from Dr. Szoke showed that Plaintiff's deformity had increased to 22 degrees on his left foot. *Id.* Despite this, and Plaintiff's continued complaints of pain, the Marion medical staff did nothing. *Id.* In May 2013, Plaintiff requested a soft shoe pass from Marion medical staff to alleviate some of his pain and suffering, but the pass was not approved and Plaintiff's pain was ignored. (Doc. 1-1, p. 10). In July 2013, Marion medical staff ignored obvious changes to Plaintiff's deformity, despite a Southern Illinois Podiatry Report calling them "severe." *Id.* In August 2013, Dr. Paul Harvey, among others, failed to address Plaintiff's deformity, which by then was documented to be "exceeding the threshold required for surgery." (Doc. 1-1, pp. 10-11). Plaintiff was given an oversized pair of orthopedic shoes to accommodate his pain and suffering, but they did not fit. (Doc. 1-1, p. 11).

In September 2013, upon review of a podiatry consultation report, defendant Paul Harvey moved to deny Plaintiff consideration for surgery due to its being considered "elective," and defendant Duncan informed Plaintiff his requested surgery would not be approved for that reason. *Id.* The defendants on Marion's medical staff continued to ignore Plaintiff's pain and suffering after that, and Plaintiff endured 12 months without care. *Id.* In October 2014, the

Marion medical staff defendants told Plaintiff his shoes should fit, despite his complaints that they did not, and soon thereafter they agreed to allow Plaintiff to return the shoes for replacement, but his shoes were never replaced. *Id.*

In February 2015, the Marion medical staff defendants provided Plaintiff the criteria for surgery. (Doc. 1-1, pp. 13). Plaintiff had qualified for surgery as early as two years prior, and this information was known by the Marion medical staff. *Id.* At this time, Marion medical staff also acknowledged that Plaintiff's request for surgery would be honored and that Plaintiff's deformity qualified as "severe." *Id.* Defendant Pass called Plaintiff's issue a "significant deformity." *Id.* In April 2015, Castillo, another physician's assistant, told Plaintiff his condition was not debilitating, despite his having surpassed surgical thresholds long before. *Id.*

In sum, the Complaint alleges that Plaintiff's condition worsened from a moderate and treatable condition, bunions, to a more severe and damaging condition that involved severe pain, arthritis, bone malunion, angular deformity, an uneven gait, shin and lower back pain, hammer toe, and the need for formal bone reconstructive surgery. (Doc 1-1, p. 14). This advanced condition resulted from the neglect and deliberate indifference of the defendants. *Id.* Walton, Bagwell, Castillo, Brooks, Pass, and Harvey, during the relevant time period, all reviewed relevant medical records pertaining to Plaintiff's condition, and the medical staff defendants examined Plaintiff on multiple occasions during which the deterioration affecting Plaintiff was noted yet ignored. *Id.* Plaintiff now has a permanent disability, requiring him to endure bone reconstructive surgery involving screws and pins, from which he will suffer from immobility and an "inability to have a normal lifestyle and income." *Id.* Plaintiff demands monetary damages from the defendants. (Doc. 1-1, p. 16).

**Discussion**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into 3 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1 –** Defendants showed deliberate indifference to Plaintiff's serious medical needs in ignoring and delaying treatment for an advancing deformity in Plaintiff's feet in violation of the Eighth Amendment.

**Count 2 –** Defendants are liable under the Federal Tort Claims Act for the medical negligence of USP-Marion officials in ignoring and delaying treatment for Plaintiff's serious medical needs.

**Count 3 –** Plaintiff's Fifth Amendment right to due process was violated by the defendants when they ignored and delayed treatment for Plaintiff's serious medical need involving an advancing deformity in his feet.

As discussed in more detail below, Count 1 will be allowed to proceed past threshold. Further, Count 2 will be dismissed without prejudice, and Count 3 shall be dismissed with prejudice. Any other intended claim that has not been recognized by the Court is considered dismissed with prejudice as inadequately pleaded under the *Twombly* pleading standard.

Generally, a federal prisoner who seeks relief for the misconduct of federal agents has three options for obtaining relief in federal court. He may bring a suit against the United States under the FTCA for misconduct of federal agents that is considered tortious under state law. *Sisk v. United States*, 756 F.2d 497, 500 n.4 (7th Cir. 1985) (citing 28 U.S.C. §§ 1346(6), 2680). He may bring a suit against the agent for a violation of his constitutional rights under the theory set forth in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). *Id.* Or, he may bring both types of claims in the same suit. *See, e.g., Ting v. United States*, 927 F.2d 1504, 1513 n.10 (9th Cir. 1991). Construed liberally, Plaintiff's Complaint raises both types of claims.

**Count 1**

In order to state a claim for deliberate indifference to a serious medical need under *Bivens*, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994). The Eighth Amendment requires a defendant to take "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

This Court finds that Plaintiff has satisfied the objective component of the deliberate indifference standard, as he claims he has suffered painful and debilitating foot deformities that require surgery and will negatively affect him for the rest of his life. Plaintiff also adequately alleges, at least at this stage, that Castillo, Pass, Duncan-Brooks, Harvey, Walton, and Bagwell knew of Plaintiff's medical problems and failed to acknowledge their severity until they had been exacerbated to the point of debilitation and caused Plaintiff pain for well over one year. More specifically, Castillo, Pass, Duncan-Brooks, Harvey, and Bagwell were allegedly responsible for Plaintiff's medical care during the relevant period and ignored and/or responded inadequately to Plaintiff's requests for care and complaints about his pain.

Walton, as warden, would normally not be implicated for the failures of his medical staff, as a non-medical prison official "will generally be justified in believing that the prisoner is in capable hands" if a prisoner is under the care of prison medical professionals. *Arnett v. Webster*,

658 F.3d 742, 755 (7th Cir. 2011) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). However, a warden may be called to answer a claim of deliberate indifference to a serious medical need if he or she was personally made aware of a lack of medical treatment by the inmate and turned a blind eye. *See Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (prisoner could proceed with deliberate indifference claim against non-medical prison officials who failed to intervene despite their knowledge of his serious medical condition and inadequate medical care, as explained in his "coherent and highly detailed grievances and other correspondences"). Given Plaintiff's allegation that Walton reviewed his medical records, and the letter (Doc. 1-1, p. 23) Plaintiff attached to his Complaint from Walton denying Plaintiff relief and outlining some of Plaintiff's medical history, Walton cannot be dismissed at this stage. Plaintiff has sufficiently shown that Walton was, to some degree, aware of Plaintiff's issues and failed to remedy them.

Count 1 will therefore proceed against Walton, Castillo, Duncan-Brooks, Bagwell, Pass, and Harvey. Count 1 shall be dismissed with prejudice, however, against the United States. *See Kaba v. Stepp*, 458 F.3d 678, 687 (7th Cir. 2006) (*Bivens* action cannot be brought against the United States).

## Count 2

Plaintiff also brings claims of "medical negligence" against the defendants under the FTCA, based on the same conduct detailed above. The FTCA allows "civil actions on claims against the United States, for money damages . . . for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Pursuant to the FTCA, "federal inmates may bring suit for injuries they sustain in custody as a consequence of the negligence of

prison officials." *Buechel v. United States*, 746 F.3d 753, 758 (7th Cir. 2014).

FTCA claims are governed by the law of the state where the tort occurred. *Parrott v. United States*, 536 F.3d 629, 637 (7th Cir. 2008). *See also Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003). In this case, Illinois law applies. Under Illinois law, a plaintiff "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," must file an affidavit along with the complaint, declaring one of the following: 1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); 2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be filed within 90 days after the filing of the complaint); or 3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the written report shall be filed within 90 days of receipt of the records). *See* 735 ILL. COMP. STAT. §5/2-622(a).[1] A separate affidavit and report shall be filed as to each defendant. *See* 735 ILL. COMP. STAT. §5/2-622(b).

Failure to file the required certificate is grounds for dismissal of the claim. *See* 735 ILL. COMP. STAT. § 5/2-622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). However,

---

[1] The August 25, 2005, amendments to a prior version of this statute were held to be unconstitutional in 2010. *Lebron v. Gottlieb Mem. Hosp.*, 930 N.E.2d 895 (Ill. 2010) (Holding P.A. 94-677 to be unconstitutional in its entirety). After *Lebron*, the previous version of the statute continued in effect. *See Hahn v. Walsh*, 686 F. Supp. 2d 829, 832 n.1 (C.D. Ill. 2010). The Illinois legislature re-enacted and amended 735 ILL. COMP. STAT. §5/2-622 effective January 18, 2013 (P.A. 97-1145), to remove any question as to the validity of this section. *See* notes on Validity of 735 ILL. COMP. STAT. §5/2-622 (West 2013).

whether such dismissal should be with or without prejudice is up to the sound discretion of the court. *Sherrod*, 223 F.3d at 614. "Illinois courts have held that when a plaintiff fails to attach a certificate and report, then 'a sound exercise of discretion mandates that [the plaintiff] be at least afforded an opportunity to amend her complaint to comply with section 2-622 before her action is dismissed with prejudice.'" *Id.*; *see also Chapman v. Chandra*, Case No. 06-cv-651-MJR, 2007 WL 1655799, at *4-5 (S.D. Ill. June 5, 2007).

In the instant case, Plaintiff has failed to file the necessary affidavits and reports. Plaintiff includes, on page 9 of his Complaint, a section he titles "Certificate of Merit Affidavit." In it, he claims that he "reviewed the facts with a knowledgeable and qualified health professional who practices in the particular field and that the professional has determined in a written report that there is a reasonable and meritorious cause for filing this lawsuit." (Doc. 1, p. 9). Plaintiff also attached to the Complaint a document labeled "Certificate of Merit." (Doc. 1-1, pp. 33-34). The document is a letter from a Family Medicine specialist that ultimately concludes that Plaintiff was justified in questioning the denial of a surgical option for his problems, and states that Plaintiff could use the letter as his "Certificate of Merit to proceed surgical repair of bunions." (Doc. 1-1, p. 34). It is unclear whether Plaintiff intends for this letter to constitute the necessary report under 735 ILL. COMP. STAT. §5/2-622(a). Whether this was his intent or not, the letter does not state that there is a reasonable and meritorious cause for filing this action, only that Plaintiff could use the letter to support his efforts to get surgery. This Court therefore does not consider Plaintiff to have satisfied the affidavit and report requirements of 735 ILL. COMP. STAT. §5/2-622.

Therefore, the claims in Count 2 shall be dismissed. However, the dismissal shall be without prejudice at this time, and Plaintiff shall be allowed 90 days from the date he filed this

lawsuit (until May 14, 2017) to file the required affidavits and reports. Should Plaintiff fail to timely file the required affidavits and reports, the dismissal of Count 2 shall become a dismissal **with prejudice.** *See* FED. R. CIV. P. 41(b). Should Plaintiff file the required affidavits and reports within the deadline, Count 2 shall only be allowed to proceed past the threshold stage against the United States of America, as "[t]he only proper defendant in an FTCA action is the United States." *Jackson v. Kotter*, 541 F.3d 688, 693 (7th Cir. 2008); *Hughes v. United States*, 701 F.2d 56, 58 (7th Cir. 1982). *See* 28 U.S.C. § 2679(b). Count 2 shall be dismissed with prejudice as against the other defendants.

### Count 3

Regarding Count 3, although the Due Process Clause of the Fifth Amendment is applicable to medical care claims during the time between arrest and conviction, the Eighth Amendment is applicable to the medical care claims of convicted inmates like Plaintiff. *See Sides v. City of Champaign*, 496 F.3d 820, 828 (7th Cir. 2007). Thus, Count 1, the Eighth Amendment claim pertaining to medical care, properly presents Plaintiff's medical care issues. The Court analyzes similar claims under the most "explicit source[s] of constitutional protection." *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see, e.g.*, *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (dismissing equal protection and Eighth Amendment claims based on same circumstances as free exercise claim). Consequently, Count 3 will be dismissed with prejudice as against all of the defendants.

### Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **WALTON**, **CASTILLO**, **DUNCAN-BROOKS**, **BAGWELL**, **PASS**, and **HARVEY**. **COUNT 1** shall be **DISMISSED** with prejudice against the **UNITED STATES OF AMERICA**.

**IT IS FURTHER ORDERED** that **COUNT 2** as against the **UNITED STATES OF AMERICA** is **DISMISSED** without prejudice. If Plaintiff desires to revive this count, Plaintiff must file the required affidavits pursuant to 735 ILL. COMP. STAT. §5/2-622 within 90 days of the date this case was filed (on or before May 14, 2017). Plaintiff must also timely file the required written report(s) of a qualified health professional, in compliance with §5/2-622. Should Plaintiff fail to timely file the required affidavits or reports, the dismissal of **COUNT 2** shall become a dismissal with prejudice, and the dismissal of the United States of America from this action will become a dismissal with prejudice. **WALTON**, **CASTILLO**, **DUNCAN-BROOKS**, **BAGWELL**, **PASS**, and **HARVEY** are **DISMISSED** with prejudice as to Count 2.

**IT IS FURTHER ORDERED** that **COUNT 3** is **DISMISSED** with prejudice as to all defendants for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that the **UNITED STATES OF AMERICA** is **DISMISSED** without prejudice from this action.

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on defendants **WALTON**, **CASTILLO**, **DUNCAN-BROOKS**, **BAGWELL**, **PASS**, and **HARVEY**; the Clerk shall issue the completed summons. The United States Marshal **SHALL** serve defendants **WALTON**, **CASTILLO**, **DUNCAN-BROOKS**, **BAGWELL**, **PASS**, and **HARVEY** pursuant to Rule 4(e) of the Federal Rules of Civil Procedure.[1] All costs of service shall be advanced by the United States, and the Clerk shall

---

[1] Rule 4(e) provides, "an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process."

provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the Complaint, and this Memorandum and Order.

It is **FURTHER ORDERED** that Plaintiff shall serve upon each defendant, or if an appearance has been entered by counsel, upon that attorney, a copy of every pleading or other document submitted for consideration by this Court. Plaintiff shall include with the original paper to be filed a certificate stating the date that a true and correct copy of the document was mailed to each defendant or counsel. Any paper received by a district judge or a magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral*.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**
**DATED: March 28, 2017**

*s/J. Phil Gilbert*
**U.S. District Judge**
